| 35 | 441 |
| 46 | 392 |

## No. 7872.

### THERESA BAUMGARDEN, CURATRIX, VS. JUSTIN J. LANGLES.

Evidence as to mental condition, acts and conduct of a party prior to and up to the time of a contract, which would not sustain a proceeding for his interdiction, is not sufficient to establish his incapacity to consent to a contract. The law protects persons physically and mentally weakened by disease, even though not to an extent sufficient absolutely to destroy contracting capacity, against fraud, undue influence and overreaching by persons dealing with them; but, in this case, such circumstances are not established as would justify the annulment of the contract on any ground.

APPEAL from the Fourth District Court for the Parish of Orleans. *Houston*, J.

*W. B. Koontz* for Plaintiff and Appellant:

1. A degree of mental derangement, or imbecility of mind, that induces the belief that the party was incapable of fully comprehending the effect and consequences of his acts; or that he is so weak as to be almost an instrument in the hands of the person seeking to obtain the advantage, will avoid a sale. Baldwin vs. Dunton, 40 Illinois Rep. 192.

2. A contract entered into with a person of insane mind is void for want of consent. R. C. C. 402.

3. Consent to a contract is void if produced by violence or threats. R. C. C. 1850.

4. Fraud vitiates all contracts. R. C. C. 1847.

5. Fraud may be proved by simple or legal presumptions, as well as by other evidence. R. C. C. 1848.

6. A contract of persons of weak understanding will be held void if the party has not exercised a deliberate judgment, or has been imposed upon, or circumvented by cunning or undue influences. Holland vs. Miller, 12 An. 624; 1 Story Equity Jurisprudence, Section 238.

7. Contracts with weak minded persons will be closely scrutinized, and a presumption of fraud arises upon proof of over influence, or any advantage, improperly taken, which would not arise in a strong minded person. Chevalier vs. Whateley, 12 An. 652; Story on Sales, Section 182.

8. A lucid interval is not a simple remission of the disease, but a temporary cure, requiring time for its development. 6 An. 104.

*Thos. J. Semmes* and *A. B. Phillips* for Defendant and Appellee.

The opinion of the Court was delivered by

FENNER, J.　Nicholas A. Baumgarden and Justin J. Langles were, in 1877 and for some years previously, equal partners in the bakery business known as the "Commercial Bakery."

On the 31st of December, 1877, by an act of sale passed before Jas. Fahey, notary public, Baumgarden sold and transferred to Langles all his right and title in the said business, including the real estate connected therewith and owned jointly by the partners, the assets, machinery, apparatus, book accounts, cash on hand, good-will, etc., for the price of forty-five thousand dollars.

On the 21st of May, 1878, Baumgarden was interdicted, and died, insane, on the 23d April, 1879. His wife was qualified as his curatrix in the interdiction proceedings, and, on the 30th of December, 1878, filed the present action, the object of which is to annul the sale above mentioned, on two grounds:

1. Notorious insanity at the date of the sale, rendering Baumgarden incapable of validly consenting thereto.

2. Fraud, in that defendant, being well aware of Baumgarden's mental weakness, took advantage thereof and, by threats, improper influences, and false and fraudulent representations, induced him to make said sale for a price much less than the value of the thing sold.

As to the first ground, a careful study of the record convinces us that a proceeding for the interdiction of Baumgarden, based upon the evidence therein contained as to his mental and physical condition and as to his actions and conduct prior and up to the date of this sale, must necessarily have failed.

This is the first test to be applied in a case of this kind.　Evidence which would not avail to provoke a decree of interdiction is insufficient to establish a decree of insanity or mental imbecility destroying a person's capacity to contract.　More than this, however, is required to invalidate the contract on this ground; for, under the Code, for this purpose it is necessary not only to establish the mental incapacity, but also that it was *notorious,* or, at least, that "the person who contracted with him was acquainted with his incapacity."　C. C. 402, 1788, Section 2.

Both of these elements are certainly wanting in the instant case; for the question now in hand is not whether Baumgarden was, to a certain extent, mentally and physically weakened by disease, but whether he was so affected to a degree rendering him incapable of validly consenting to a contract and so a fit subject for interdiction.

It is to be borne in mind that Langles stood in relations with Baumgarden which rendered his dealing with him rather than with another

a matter of necessity and not of choice. He was his partner. He desired to terminate that partnership and to liquidate its affairs. He had a legal right to do so. He had the right to do so by amicable agreement, if Baumgarden was mentally capable of contracting. The question, then, for him to determine was whether Baumgarden *was* so capable. If he believed him to be so, and if he was not notoriously otherwise, he had the right to contract with him, and such contract cannot be annulled for want of capacity to contract.

Baumgarden's infirmities and Langles' knowledge of them, far from being obstacles to entering into such a contract, were powerful and proper motives inducing thereto, because they impaired the value of Baumgarden's services to the partnership; and unless those infirmities were such as rendered him legally incapable of contracting, and Langles knew them to be so, their existence and Langles' knowledge of them were not sufficient, *per se*, to annul the contract.

We fully recognize the fact, however, that a person may be mentally and physically weakened by disease, without being legally incapacitated to contract, and the law extends its sheltering arms over such persons to the extent of scrutinizing contracts made by them and protecting them from imposition, undue influence, improper advantage and other fraudulent conduct by persons dealing with them. Holland vs. Miller, 12 An. 624; Chevalier vs. Whately, id. 652.

Undoubtedly, the condition of Baumgarden was such that, if we were satisfied that Langles had been guilty of such conduct, we should not hesitate to afford relief. We find no concealment, no misrepresentation, no threats, no improper influence, and no advantage.

The proposition to sell out came originally from Baumgarden. Langles' offer of a price was a give or take offer. Baumgarden, shrewdly and intelligently, insisted upon and obtained more advantageous terms. The transaction was conducted openly and with the knowledge of his wife and friends, and finally executed under the supervision of his selected friend and of his lawyer.

The price was not seriously, if at all, inadequate.

Since the appeal herein was taken, Theresa Baumgarden, the curatrix, has died; and the major heirs of herself and of N. A. Baumgarden have openly abandoned the appeal, leaving it to be prosecuted only in the interest of a minor heir. This makes it doubtful if the interest of anyone would be promoted by the annulment of the sale, and we are certain that the law and evidence of the case do not support the demand to that effect.

Judgment affirmed at appellant's cost.

Poché, J., takes no part in the opinion, being absent when the argument was made.