## MARTINEZ v. MOLL.

### (Circuit Court, E. D. Louisiana. June 16, 1891.)

1. EQUITY—RESCISSION OF CONTRACT.
A man 28 years old bought, after examination, a plantation which was only worth two-thirds of the price he paid for it. There was no evidence of fraud or undue influence. The vendor offered to release him from the bargain before it was consummated, but he refused to be released. *Held*, that the sale could not be set aside in equity.

2. SAME—INSANITY—EVIDENCE.
Under Civil Code La. art. 1788, which provides that, where there has been no interdiction, a contract will not be void on the ground of insanity unless the party is notoriously insane, the evidence of five witnesses that a man is of feeble intellect, when contradicted by that of seven witnesses, there being no evidence that the purchaser knew of the vendor's incapacity, is not sufficient evidence of notorious insanity to avoid a contract.

In Equity.
*Henry C. Miller*, for plaintiff.
*R. H. Browne*, for defendant.

BILLINGS, J. This is a suit in equity submitted upon the pleadings, which are the bill, answer, and replications, and upon the proofs for a final decree. It is a suit for the rescission of a conveyance made by the complainant to the defendant of two lots of ground, with the buildings thereon, known as "No. 52 Canal Street," in the city of New Orleans, for a reconveyance of the same, and for the rents and profits thereof. The grounds for the decree asked by the bill of complaint are fraud and undue influence and mental incapacity. The transactions between the parties were as follows: In September, 1888, the complainant exchanged the store above described (52 Canal street) for a sugar plantation in the parish of St. John the Baptist, the store being estimated, over and above a mortgage existing upon it for $13,000, at about $14,-000, and the plantation, together with a store upon it, which was valued at about $2,000, at $27,000; that is, the plantation, by itself, was estimated at $25,000. For the difference (about $14,000) notes bearing a mortgage upon the plantation were given by the complainant. At the time of the exchange an apparently promising crop was growing and nearly made upon the plantation, which was taken off by the complainant, netting $3,859, instead of a much larger sum, viz., about $10,000, which had been expected. This diminution is by the defendant attributed to the storm in August. In September, 1889, just about six months after the exchange, the complainant abandoned the whole purpose of conducting the plantation, and reconveyed it to the defendant for the amount due by him to the defendant, in the neighborhood of $14,000. Minor facts are brought before the court in the testimony, but those above recited constitute the important ones, and give in outline the transaction. From these it evident that in the purchase of the plantation, with all the uncertainties attending the cultivation of sugar, giving in exchange for it the productive and well-located city property, and, too, the purchaser, the complainant, being inexperienced in the production of sugar, the complainant made an unwise purchase. This is beyond all question. But that, in and of itself, cannot authorize the court to rescind the sale.

Was the complainant insane? and was he induced to make the exchange or purchase by the fraud and undue influence of the defendant?

*First.* Was he insane? As to his insanity, five witnesses—Mrs. Hubert, complainant's mother-in-law, Louis Hubert, complainant's brother-in-law, Robert Upton, William Pepperman, James April—testify as to his being, in their opinion, feeble—hardly average—in intellect. To these should be added the brother of the complainant, whose statement comes through the notary, (Upton.) As to his being of everage intellect, seven witnesses—H. L. Bidstrup, J. J. Wetta, J. B. Ash, John Webber, sheriff, John G. Moll, Jr., Paul Turner, and L. De Poorter—testify:

"He has never been interdicted. He was at the time of this transaction 28 years of age, and had been left by his father, who had been but a short time dead, as his portion of the estate, the property which is the subject of this suit. He had quarreled with his father on account of his marriage. At the time of the purchase or exchange he was driver of a street-car, and at the time he gave his testimony in this cause he was store-keeper for an auction-house in San Antonio, Tex."

The statutory provisions as to what constitutes insanity, which, according to the jurisprudence of the state, include feebleness of intellect, are found in Civil Code, art. 1788. The party to be declared insane, when there has been no interdiction, must be notoriously insane; *i. e.*, the insanity must be such that it could not but be known to the party dealing with him. "Notoriously" means "well and generally understood." That clearly is not this case, which closely resembles, as to the want of notoriety, the case of *Kenney* v. *Dow*, 10 Mart. (La.) 603, where the court, rejecting the plea of insanity, say: "It must be notorious and clearly proved." In *Bank* v. *Dubreuil*, 5 Mart. (La.) 426, the court say:

"But the law has provided that 'no act anterior to the petition for interdiction shall be annulled, except where it shall be proved that the cause of such interdiction notoriously existed at the time when the deed, the validity of which being contested, was made, and that the party who contracted with the insane person or lunatic could not have been deceived as to the state of his mind.' Civil Code, p. 80, art. 15. Here the existence of the cause of the interdiction at the time the mortgage was executed appears to us to be proven; but the Code requires also that we should have proof of the impossibility of the plaintiffs who contracted with the defendant being deceived as to the state of her mind."

See the late case of *Baumgarden* v. *Langles*, 35 La. Ann. 441, 443. In *Stockmeyer* v. *Tobin*, 11 Sup. Ct. Rep. 504, (Sup. Ct. U. S., decided March 2, 1891, opinion by Mr. Justice HARLAN,) that tribunal, in affirming the judgment rendered by Judge PARDEE in this court, deals exhaustively with the whole subject, interpreting Civil Code, art. 1788, subd. 3, and affirming the doctrine of the jurisprudence of Louisiana, as stated above. It is to be observed that at the common law incapacity, in and of itself, may be the ground of avoiding a deed, but that, under our law, there must be not only incapacity, but it must be so "notorious"—so generally known—as to make it certain the party sought to be affected by it knew it. I do not think that, under our law, Martinez was insane, or incompetent to contract.

*Secondly.* Did the defendant practice fraud and exercise undue influence? The parties contradict each other as to who first suggested the purchase by the complainant of the sugar plantation; each attributing it to the other. But the purchase was made after an inspection of the plantation and its stock by the complainant. There is not the slightest evidence that the defendant made any false representations, unless it is to be inferred from the estimated value of the plantation. Of the estimates of the witnesses, that of Mr. Legendre would be the best guide. His outside estimate is $16,000, and $25,000 was the price paid. It should be observed that at the time of the purchase the crop, then nearly

made, seems to have been so promising that the parties estimated an outcome net of $8,000 or $10,000, against slightly less than $4,000 as the event proved; so that the case is one where the property was worth about two-thirds of the price paid. As to undue influence, the evidence shows that, after the brothers had objected to the complainant buying, the defendant offered to release the complainant altogether from the bargain, but that the complainant not only declined to be released, but threatened to sue the defendant for damages unless the preliminary contract was carried out. So that the case sums itself up in this: A young man of the age of 28 years, having inherited a property from his father, loses it altogether by an unwise purchase of a property worth only two-thirds of what he gave for it, and by yielding to the seductive hopes inspired in the mind of the inexperienced as to amounts to be made by raising sugar-cane. There is established neither insanity nor fraud nor undue influence. The case made by the proofs shows that the complainant made a poor bargain, and merely on account of this he cannot have relief in a court of equity.